# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

KATHY L. MCCLAIN, )
 )
      **Plaintiff,** )
 )
v. ) Case No. CIV-17-390-SPS
 )
COMMISSIONER of the Social )
Security Administration, )
 )
      **Defendant.** )

## OPINION AND ORDER

The claimant Kathy L. McClain requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was fifty-six years old at the time of the most recent administrative hearing (Tr. 599). She has an eighth-grade education, and has worked as a hospital cleaner, apartment manager, and janitor (Tr. 600, 614). The claimant alleges she has been unable to work since November 15, 2011, due to restless leg syndrome, diverticulitis, and depression (Tr. 164).

**Procedural History**

On January 19, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 120-32). Her applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 2, 2014 (Tr. 13-24). The Appeals Council denied review, but this Court reversed in Case No. CIV-15-308-SPS and remanded with instructions to properly consider the opinion of treating physician Dr. Nielson.[2] On remand, ALJ James Bentley held a second administrative hearing and determined the claimant was not disabled through January 2,

---

[2] While the claimant's original application was pending appeal to the District Court, she filed a new application alleging disability beginning January 3, 2014, the day after ALJ Bentley's unfavorable decision. A different ALJ found the claimant disabled as of January 3, 2014, based on the subsequent application. Thus, the relevant period applicable to this appeal is November 15, 2011, through January 2, 2014 (Tr. 573).

2014, in a written opinion dated June 23, 2017 (Tr. 573-87).  The claimant did not file written exceptions with the Appeals Council, so the ALJ's June 2017 opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), *i. e.,* she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; sit/stand/walk six hours in an eight-hour workday with a sit-stand option; frequently, but not constantly, reach, handle, and finger with her right upper extremity; and occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; but could never climb ladders, ropes, or scaffolds (Tr. 577-78).  The ALJ further found that the claimant could understand, remember, and apply simple and detailed instructions; concentrate and persist for extended periods in order to complete simple and detailed work tasks with routine supervision; and maintain superficial relationships with coworkers, supervisors, and the general public (Tr. 578).  The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, cashier II, small products assembler, and conveyor line bakery worker (Tr. 585-86).

## Review

The claimant contends that the ALJ failed to properly evaluate her subjective statements. More specifically, she contends that the ALJ improperly relied on her failure to seek medical and psychological treatment to discount her subjective statements. The Court agrees that the ALJ erred in evaluating the claimant's subjective symptoms, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant's mild degenerative changes of the cervical spine and right shoulder, disorders of the lumbar spine, restless leg syndrome, right upper extremity fracture with surgical repair, hypertension, diverticulosis, major depressive disorder, and alcohol abuse were severe impairments (Tr. 576). The relevant medical evidence related to the claimant's physical impairments reveals that prior to March 2013, her treatment largely consisted of emergent care for acute problems including chest pain, knee pain, flank and abdominal pain, and a rib fracture (Tr. 357-58, 339-40, 342-44, 960-89). Dr. Ronald Schatzman performed a physical consultative examination of the claimant on May 16, 2012, the results of which were normal (Tr. 427-33).

On March 13, 2013, the claimant dislocated her right elbow, and fractured her right wrist when she fell from a ladder (Tr. 524). The claimant underwent surgery the following day, which included an open reduction and internal fixation of the radial head and distal radius, and a closed reduction of her elbow (Tr. 518-19). At a follow-up appointment on April 29, 2013, Dr. Nielson found reduced range of motion in her elbow, normal supination and pronation in her wrist, reduced flexion and extension in her wrist, weakness in her grip

and pinch, and tenderness over the first dorsal extensor compartment (Tr. 561). He noted the claimant's swelling in her elbow was "much improved," the swelling in her wrist was "down substantially," and that her distal radius "looked excellent." (Tr. 561). Dr. Nielson opined that the claimant probably had De Quervain's disease and administered a steroid injection (Tr. 561). At a follow-up appointment on June 3, 2013, Dr. Nielson noted the claimant still had weakness in her grip and pinch (Tr. 829). He noted that the claimant's recovery would take between six and twelve months, but believed that she would almost certainly be left with some degree of functional deficit in her elbow range of motion or weakness of grip (Tr. 829).

On October 21, 2013, the claimant presented to the Atoka County Medical Center Emergency Department and reported head pain and neck pain after an assault (Tr. 924-33). A CT scan of the claimant's brain revealed a possible contusion, an x-ray of her right elbow was normal with stable postsurgical changes, and an x-ray of her neck revealed degenerative disc space narrowing at C5-6 with anterior osteophytosis (Tr. 929-31). The claimant returned three days later and reported back pain (Tr. 911). A CT scan of the claimant's lumbar spine revealed mild compression of L5 superior endplate with decreased vertebral body height which appears nonacute, minimal grade 1 anterolisthesis at L4-5 with disc bulge and facet arthropathy and mild stenosis of the central canal and neural foramina bilaterally, and minimal spondylosis at L1-2 (Tr. 918).

As to the claimant's mental impairments, Dr. Kathleen Ward conducted a consultative mental status examination on April 17, 2012 (Tr. 407-10). Dr. Ward observed that the claimant appeared nervous, became tearful during the interview and examination

tasks, and appeared to give good effort (Tr. 408). She noted the claimant's thought processes were logical; her speech was spontaneous with typical tone, rate, and volume; she had no bizarre thought content or evidence of delusional thought; and was oriented to time, date, and place (Tr. 408-09). Dr. Ward estimated the claimant's intellectual abilities to be above seventy, and indicated the claimant had minor deficits in social judgment and problem solving (Tr. 409). She assessed the claimant with major depressive disorder and indicated that she needed talk therapy to process trauma issues (Tr. 409).

On April 23, 2012, the claimant was admitted to the Oklahoma County Crisis Intervention Center with worsening anxiety, depression, and suicidal ideation (Tr. 412-25). She was stabilized on medication and discharged on April 25, 2012, with a referral to Carl Albert Community Mental Health Center ("CACMHC") for outpatient care (Tr. 415, 423). The claimant established care at CACMHC on May 9, 2012, and reported continued anxiety, but that her depression was improved with medication (Tr. 1092). She followed up with CACMHC sporadically, and was discharged on January 11, 2013, for failing to return (Tr. 1084-1091). She returned to CACMHC in February 2013 and April 2013, but did not appear for her scheduled appointments in July 2013 or early September 2013 (Tr. 1070-76). On September 13, 2013, the claimant reported that she was doing "ok," her mood was "in between," and that she had no hallucinations, paranoia, or suicidal/homicidal ideations (Tr. 1068). Dr. William Mings noted the claimant was stable (Tr. 1068-69). Thereafter, the claimant did not appear for scheduled appointments in December 2013, March 2014, or April 2014, and she was discharged on August 6, 2014, for failing to return (Tr. 1060-67).

At the most recent administrative hearing, the claimant testified that she was unable to work due to her back, arm, elbow, legs, medication side effects, depression, and anxiety (Tr. 601). She indicated that she did not have much treatment for her back because she did not have any insurance (Tr. 601). As to her right arm, the claimant testified that despite her surgery, she could not lift, pinch, or straighten it completely, and that has trouble with various fine manipulations due to achiness (Tr. 601-02, 605). Regarding her mental impairments, the claimant indicated that she experienced visual hallucinations in the past, but no longer had them (Tr. 604). She stated that she does not want to leave her apartment because people make her mad and she gets nervous (Tr. 604). She further stated that she is unable to concentrate or cope when she takes her restless leg syndrome medication, and therefore does not always take it as prescribed (Tr. 609). As to specific limitations, the claimant testified that she could lift five or six pounds with her right arm and a gallon of milk with her left arm, could sit between ten and thirty minutes, and could stand for ten or fifteen minutes (Tr. 605-06).

In his written opinion, the ALJ summarized the claimant's testimony, as well as the medical evidence. In discussing the claimant's subjective complaints, the ALJ concluded that her allegations of disabling physical and mental symptoms were inconsistent with the following: (i) Dr. Schatzman's 2012 consultative examination, (ii) Dr. Ward's 2012 consultative examination, (iii) her lack of medical care between March 2012 and March 2013, (iv) her pursuit of treatment primarily through the emergency room, (v) her failure to follow up with a primary care physician upon discharge from emergency room visits as instructed, (vi) her failure to pursue treatment for the mild degenerative changes in her

-8-

cervical spine and right shoulder revealed on x-ray in March 2013, (vii) her failure to report low back pain during the relevant period apart from the October 2013 emergency room visit, (viii) her failure to appear at scheduled mental health appointments, and (ix) her activities of daily living (Tr. 578-85).

The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration,

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The claimant asserts that the ALJ relied on her failure to seek treatment to dismiss her subjective statements without considering whether she had an acceptable reason for her limited treatment, and the Court agrees. Pursuant to SSR 16-3p, a claimant's symptoms may be inconsistent with the overall evidence of record "if the frequency or extent of treatment sought by [a claimant] is not comparable with the degree of the [claimant's] subjective complaints, or if the [claimant] fails to follow prescribed treatment that might improve symptoms." *Id.* at *9. However, an ALJ will not find symptom inconsistency on this basis without considering possible reasons why the claimant may not have sought treatment. *See Id.* at *9-10. The ruling gives specific examples of valid explanations,

including, *inter alia*, the inability to afford treatment without access to free or low-cost medical services. *Id.; see also Alarid v. Colvin,* 590 Fed. Appx. 789, 793 (10th Cir. 2014), *citing Threet v. Barnhart,* 353 F.3d 1185, 1190-91 n.1 (10th Cir. 2003) ("[i]nability to pay may provide a justification for a claimant's failure to seek treatment."). The ALJ mentioned that the claimant's limited treatment may have been "unavoidable considering [her] area of residence, her lack of health insurance, or any number of other factors." (Tr. 583). However, in light of the claimant's testimony that she did not seek further treatment because she did not have insurance, the ALJ erred in failing to *discuss* the claimant's apparent inability to afford additional treatment for her impairments. *See Thomas v. Barnhart,* 147 Fed. Appx. 755, 760 (10th Cir. 2005) (faulting the ALJ for failing to comment on evidence that the claimant could not afford medications); *Dejulio v. Berryhill,* 2019 WL 1177983, at *4 (N.D. Okla. March 13, 2019) (finding error where the ALJ mentioned the claimant's inability to afford medication or treatment, but did not discuss it in the context of whether such inability provided a justification for failure to seek treatment).

The Court notes the Commissioner's argument that any error the ALJ made by not considering the reasons for the claimant's limited treatment is harmless since the ALJ provided a number of additional reasons to discount her subjective symptoms. The ALJ's subjective symptom analysis is set forth above. However, the other specific reasons the ALJ gave are not entirely supported by the record. For example, the ALJ referenced Dr. Schatzman's 2012 consultative physical examination, but such examination provides little support for the ALJ's symptom evaluation since it predated the claimant's shoulder injury

and subsequent surgery. Similarly, the ALJ referenced Dr. Ward's 2012 consultative psychological examination, but her examination predated *all* of the claimant's mental health treatment. Lastly, the ALJ found that the claimant "had a good relationship with her children, and was capable of taking care of her pets, doing household chores, and shopping with her sister" (Tr. 585), while ignoring that she *also* stated she needed reminders to feed her pets, experiences swelling the day after cleaning the floor, spends only thirty minutes cleaning the bathroom, spends one hour shopping with her sister, and is ashamed because her house is dirty (Tr. 42, 210-12, 608). Further examination of such "perceived" inconsistencies indicates that although the ALJ cited all the available evidence, he interpreted it in a manner favorable to his foregone conclusions and ignored evidence that did not support his conclusions. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984).

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis of the claimant's subjective symptoms. On remand, the ALJ should properly evaluate the evidence, then re-assess the claimant's symptoms. If the ALJ's subsequent subjective symptom evaluation results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**